IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **DAVID PAHER and** | ) | |
| **PHILENA PAHER** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:  2:06cv297-DRB** |
| | ) | |
| **UICI;** | ) | |
| **MEGA LIFE & HEALTH INSURANCE** | ) | |
| **COMPANY;** | ) | |
| **NATIONAL ASSOCIATION FOR THE** | ) | |
| **SELF EMPLOYED;** | ) | |
| **STEPHANIE TRANCHINA;** | ) | |
| **and FICTITIOUS DEFENDANTS** | ) | |
| **"A," "B," and "C," whether singular or** | ) | |
| **plural, are those other persons,** | ) | |
| **corporations, firms, or other entities** | ) | |
| **whose wrongful conduct caused or** | ) | |
| **contributed to the cause of the injuries** | ) | |
| **and damage to the plaintiff, all of** | ) | |
| **whose true and correct names are** | ) | |
| **unknown to the at this time,** | ) | |
| **but which will be substituted by** | ) | |
| **amendment when ascertained,** | ) | |
| | | |
| **Defendants.** | | |

## HEALTHMARKETS, INC.'S (FORMERLY KNOWN AS UICI) MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, pursuant to

Rules 12(b)(6) and 9(b), Defendant HealthMarkets, Inc., formerly known as and incorrectly

designated in Plaintiff's Complaint as UICI[1], hereby submits this Motion to Dismiss (the

---

[1] UICI changed its name to HealthMarkets, Inc. on April 17, 2006. (See Affidavit of Mark Hauptman, attached as Exhibit 1)

"Motion") the Complaint ("Complaint") filed by Plaintiffs David and Philena Paher ("Plaintiffs"). In support of its Motion, HealthMarkets, Inc. respectfully states as follows:

## I.  PRELIMINARY STATEMENT

Plaintiffs' lawsuit is an insurance dispute with their health insurer The MEGA Life and Health Insurance Company. Plaintiffs vaguely allege that "Defendants" (1) breached their insurance contract; (2) acted in bad faith by failing to pay claims; (3) committed fraud and suppression by not honoring the insurance contract; and (4) conspired to commit such fraud. (See generally Compl.). Plaintiffs include HealthMarkets, Inc., a Texas based holding company, which is the parent corporation of HealthMarkets, L.L.C., which is MEGA's parent corporation as a defendant in their action, even though they fail to allege any interaction, relationship, or transaction with HealthMarkets, Inc., or that HealthMarkets, Inc. does, or has ever done, business in Alabama. Despite this dearth of allegations, Plaintiffs purportedly include HealthMarkets, Inc. in the six causes of action they assert against unspecified "Defendants." Plaintiffs' theory against HealthMarkets, Inc. is a vaguely alleged corporate veil piercing. (See Compl., ¶¶ 23-27).

Plaintiffs' claims against HealthMarkets, Inc. must be dismissed because this Court lacks personal jurisdiction over HealthMarkets, Inc. HealthMarkets, Inc. does not have the contacts with the State of Alabama necessary for this Court to exercise personal jurisdiction over it. As set forth in the Affidavit of Mark Hauptman,[2] HealthMarkets, Inc. is a holding company that has never done business in Alabama and is not registered to do business in Alabama. HealthMarkets, Inc. has no property, employees, agents, or officers in Alabama, and does not pay taxes in

---

[2] The Hauptman Affidavit is attached hereto and incorporated herein as Exhibit "1," in support of HealthMarkets, Inc.'s Rule 12(b)(2) motion only. The Court may consider written materials, including affidavits, in support of a motion to dismiss for lack of personal jurisdiction. See Mercantile Capital, LP v. Fed. Transtel, Inc., 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002) (defendants may present affidavits or other materials evidencing lack of personal jurisdiction) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000).

Alabama. Indeed, HealthMarkets, Inc. was served with Plaintiffs' Summons and Complaint through an officer in Texas. Moreover, HealthMarkets, Inc. is not an insurance company, it does not administer insurance claims, and it is not registered to sell insurance in Alabama or any other state. Thus, it had no involvement in the sale or administration of the health insurance coverage purchased by Plaintiffs, which is the basis for Plaintiffs' claims. Without these minimum contacts, this Court's exercise of jurisdiction over HealthMarkets, Inc. would violate the due process required by the United States Constitution and Alabama law. Accordingly, all of Plaintiffs' claims against HealthMarkets, Inc. should be dismissed with prejudice pursuant to Rule 12(b)(2). Moreover, Plaintiffs' alter ego allegations are insufficient to ignore the corporate separateness of HealthMarkets, Inc. and MEGA and to exercise jurisdiction over HealthMarkets, Inc.

Alternatively, subject to the Court's ruling on jurisdiction, and without consenting to jurisdiction in Alabama, HealthMarkets, Inc. moves to dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(6) and 9(b) because Plaintiffs have failed to state a claim against it upon which relief can be granted. Accordingly, all of Plaintiffs' claims against HealthMarkets, Inc. fail and their Complaint against it should be dismissed with prejudice.

## II. MOTION TO DISMISS PURSUANT TO RULE 12(B)(2) FOR LACK OF PERSONAL JURISDICTION

### A. Standard for Determining Whether *In Personam* Jurisdiction Exists in Diversity Matters.

When adjudicating a motion to dismiss for lack of personal jurisdiction, where no evidentiary hearing is held, a plaintiff bears the initial burden of establishing a *prima facie case of jurisdiction* over the nonresident defendant. See Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000); see also Butler v. Beer Across Am., 83 F. Supp. 2d 1261, 1263

(N.D. Ala. 2000). Here, Plaintiffs fail to establish the requisite *prima facie* case of jurisdiction over HealthMarkets, Inc., a nonresident defendant.

Personal jurisdiction over a non-resident defendant in a diversity action is determined by the law of the forum in which the federal court sits. See Berry v. Salter, 179 F. Supp. 2d 1345, 1348 (M.D. Ala. 2001) ("When a federal court exercises subject matter jurisdiction based on diversity of citizenship, the personal jurisdiction analysis is the same as that of the state court in which the federal court resides."). Alabama's long-arm statute "permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." Mercantile Capital, LP, 193 F. Supp. 2d at 1248; see also Banton Indus., Inc. v. Dimatic Die & Tool Co., 801 F.2d 1283, 1284 (11th Cir. 1986). Thus, this Court must determine whether the exercise of personal jurisdiction over HealthMarkets, Inc. comports with due process. See id.

Due process permits this Court to "exercise personal jurisdiction over a nonresident defendant only so long as there exists 'minimum contacts' between the defendant and the forum state." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). "The critical question with regard to the nonresident defendant's contacts is whether the contacts are such that the nonresident defendant 'should reasonably anticipate being haled into court in the forum state.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). Plaintiffs bear the burden of establishing "minimum contacts" through either specific or general jurisdiction. See Consol. Dev. Corp., 216 F.3d at 1291.

To establish specific jurisdiction, a plaintiff must demonstrate that the nonresident defendant's activities within the forum state are related to the cause of action alleged in the complaint. See id. The requisite minimum contacts will exist to support the exercise of specific

4

jurisdiction "only where the [nonresident] defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." Burger King Corp., 471 U.S. at 475. Consequently, the nonresident defendant's "own conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagon, 444 U.S. at 297.

In the alternative, even where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general jurisdiction* over a defendant based on the defendant's general business contacts with the forum state. See Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 415 (1984) When evaluating general jurisdiction, courts apply a more stringent minimum contacts test, requiring plaintiff to demonstrate the defendant's continuous and systematic general business contacts with the forum state. Id.; see also Consol. Dev. Corp., 216 F.3d at 1292. Courts impose this heightened burden because general jurisdiction is predicated on facts not related to the events giving rise to the suit. Id. Such contacts include transacting business in Alabama, owning real property in Alabama, contracting to supply goods or services in Alabama, and causing tortuous injury through an act or omission in Alabama or outside Alabama, if the person regularly conducts business in, derives substantial revenue from, or has a persistent course of conduct in Alabama. See Ala. R. Civ. P. 4.2; Berry, 179 F. Supp. 2d at 1348.

Even if minimum contacts exist through specific or general jurisdiction, this Court must then consider whether exercising personal jurisdiction over the nonresident defendant would

comport with traditional notions of fair play and substantial justice. See Butler, 83 F. Supp. 2d at

1268 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); Future Tech. Today, Inc.

v. OSF Healthcare Sys., 218 F.3d 1247, 1251 (11th Cir. 2000) (even though minimum contacts

existed, failure to satisfy factors for traditional notions of fair play and substantial justice barred

exercise of personal jurisdiction) (citing Burger King Corp., 471 U.S. at 476).  The relevant

inquiry is whether the district court's exercise of personal jurisdiction over a nonresident

defendant with minimum contacts is reasonable. See Ruiz de Molina v. Merritt & Furman Ins.

Agency, Inc., 207 F.3d 1351, 1358 (11th Cir. 2000), aff'd, No. 02-13246, 2002 WL 31651923

(11th Cir. Nov. 12, 2002).  The Eleventh Circuit has identified five significant factors in

evaluating reasonableness:

     a.    the burden on the defendant;

     b.    the forum State's interest in adjudicating the dispute;

     c.    the plaintiff's interest in obtaining convenient and effective relief;

     d.    the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and

     e.    the shared interest of the several States in furthering the fundamental substantive social policies.

See Future Tech. Today, Inc., 218 F.3d at 1251 (holding that it would be unreasonable to subject

defendant to defending a lawsuit in Florida based upon defendant entering into one service

arrangement, over the telephone, without ever setting foot in Florida).

**B.    Constitutional Due Process Prevents this Court From Exercising Personal Jurisdiction over HealthMarkets, Inc..**

This Court should not exercise personal jurisdiction over HealthMarkets, Inc. for several

significant reasons.  First and foremost, far from establishing a *prima facie* case for jurisdiction,

Plaintiffs' own allegations affirmatively demonstrate that HealthMarkets, Inc. lacks contacts with

Alabama sufficient to warrant an exercise of personal jurisdiction. Second, the evidence

presented herein clearly shows that HealthMarkets, Inc. does not have sufficient contacts with

Alabama to warrant an exercise of personal jurisdiction. Finally, even if this Court were to find

contacts sufficient to establish personal jurisdiction, this Court's exercise of personal jurisdiction

over HealthMarkets, Inc. would violate traditional notions of fair play and substantial justice.

### 1. Plaintiffs' Complaint Does Not Establish A Prima Facie Case of Personal Jurisdiction Over HealthMarkets, Inc.

Although Plaintiffs attempt to entangle HealthMarkets, Inc. into their claims by asserting

their allegations against unspecified "Defendants," Plaintiffs do not allege HealthMarkets, Inc.

(as opposed to any other defendant) conducted any activities in Alabama related to their causes

of action. (See generally Compl.) Rather, they simply allege that they purchased a policy of

insurance numbered 09053629432. A copy of this policy is attached as Exhibit 2 and is clearly a

contract between themselves and MEGA, not HealthMarkets, Inc.[3] (See id.)

Moreover, Plaintiffs do not allege HealthMarkets, Inc. is registered to, or actually did,

conduct any business in Alabama, much less that it had continuous or systematic business

contacts therein. (See generally Compl.) Rather, Plaintiffs allege that HealthMarkets, Inc. is a

foreign corporation organized and existing under the laws of the state of Delaware, with a

principal place of business in Texas, and merely that HealthMarkets, Inc. owns and controls its

subsidiary MEGA. (See id. ¶ 2.)

Thus, *Plaintiffs' own allegations* demonstrate HealthMarkets, Inc.'s lack of contacts with

Alabama and the causes of action alleged in the Complaint. (Id.)

---

[3] Since this contract is central to and referenced in the Complaint, the Court may consider this in a motion to dismiss. See Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1369 (11th. Cir. 1997).

2.    **HealthMarkets, Inc. Does Not Have Any Contacts with Alabama to Provide this Court with Specific or General Jurisdiction.**

a.    This Court Lacks Specific Jurisdiction Over HealthMarkets, Inc.

This Court does not have specific jurisdiction over HealthMarkets, Inc. because HealthMarkets, Inc. did not conduct activities in Alabama related to the causes of action alleged in the Complaint. Each of Plaintiffs' causes of action are predicated on the sale and/or administration of their Certificate. (See generally Compl.) The Certificate is a contract of insurance between Plaintiffs and MEGA. (See Exhibit 2, attached hereto) Moreover, HealthMarkets, Inc. is not an insurer, and does not participate in the business of insurance (or any other business) in Alabama. (Hauptman Aff., ¶¶ 6-7.) As such, HealthMarkets, Inc. was not involved in the sale or administration of the Certificate. (Id. ¶ 3.) Consequently, Plaintiffs cannot demonstrate that HealthMarkets, Inc. conducted activities in Alabama that are related to the causes of action alleged in their Complaint. See Consol. Dev. Corp., 216 F.3d at 1291. Further, because HealthMarkets, Inc. does not conduct any business in Alabama, Plaintiffs cannot demonstrate that it "purposely avail[ed] itself of the privilege of conducting activities" therein, or that it "invok[ed] the benefits and protections" of Alabama's law. Id. Accordingly, Plaintiffs cannot establish specific jurisdiction over HealthMarkets, Inc. in Alabama. Id.

b.    This Court Lacks General Jurisdiction Over HealthMarkets, Inc.

This Court does not have general jurisdiction over HealthMarkets, Inc. because HealthMarkets, Inc. did not have continuous and systematic contacts with the State of Alabama. HealthMarkets, Inc. is a Delaware corporation headquartered in Texas that is not registered to, and does not conduct, business in Alabama. (See Hauptman Aff. ¶¶ 2, 4.) HealthMarkets, Inc. does not have any employees in Alabama, does not own property in Alabama, and pays no taxes in Alabama. (Id. ¶ 4.) HealthMarkets, Inc. does not even have a registered agent for service of

process in Alabama. (See id. ¶ 4.) Indeed, HealthMarkets, Inc. was served with Plaintiffs'

Summons and Complaint through an officer in Texas. (See id. ¶ 5.) In fact, the only relationship

between HealthMarkets, Inc. and the State of Alabama is HealthMarkets, Inc.'s ownership of the

parent corporation of MEGA, a subsidiary that does business in Alabama. (Id. ¶¶ 2, 3.)

However, the mere ownership of a subsidiary conducting business in Alabama is not a sufficient

basis to confer jurisdiction over a parent company. See S. Ala. Pigs, LLC v. Farmer Feeders,

Inc., 305 F. Supp. 2d 1252, 1258-59 (M.D. Ala. 2004) (mere ownership of a subsidiary

conducting business in Alabama is an insufficient basis to confer jurisdiction over a parent

company). Hence, because HealthMarkets, Inc. does not have "continuous and systematic"

business contacts with the State of Alabama, this Court does not have general jurisdiction over

HealthMarkets, Inc. See Ala. R. Civ. P. 4.2; Helicopteros Nacionales de Columbia, 466 U.S. at

415; see also Consol. Dev. Corp., 216. F.3d at 1292.

   Moreover, Plaintiffs' alter ego allegations are insufficient to establish personal

jurisdiction over HealthMarkets, Inc. Plaintiffs' allegations are (1) that HealthMarkets, Inc.

controls MEGA; (2) that HealthMarkets, Inc. represents that the assets and liabilities of MEGA

are assets and liabilities of HealthMarkets, Inc.; (3) that members of the Board of Directors of

MEGA are HealthMarkets, Inc. employees; and, (4) that MEGA and HealthMarkets, Inc. have

no substantial existence of their own. Such allegations, even taken as true, are not enough to

pierce the corporate veil and for this Court to exercise jurisdiction over HealthMarkets, Inc. See

generally South Ala. Pigs, 305 F. Supp. 2d at 1258 (in order to pierce the corporate veil, misuse

of control and harm or loss resulting from misuse of control must be shown); In re Silicone Gel

Breast Implants Product Liability Litigation, 837 F. Supp. 1128, 1135-36 (N.D. Ala.

1993)(existence of common directors and officers is not, by itself, sufficient to pierce the

9

corporate veil); LaSalle Bank v. Mobile Hotel Properties, L.L.C., 274 F. Supp. 2d 1293 (S.D. Ala. 2003).

**3.     Even if Minimum Contacts Did Exist (Which They Do Not), Asserting Personal Jurisdiction over HealthMarkets, Inc. Would Not Comport with Traditional Notions of Fair Play and Substantial Justice.**

Under the Eleventh Circuit's enumerated factors, even if the Complaint established *prima facie* evidence of HealthMarkets, Inc.'s minimum contacts with Alabama - - which it does not - - this Court's exercise of personal jurisdiction over HealthMarkets, Inc. would not comport with traditional notions of fair play and substantial justice.

First, it would place an undue burden on HealthMarkets, Inc. to be haled into a state where it has no connection and has not conducted any activities. See Madara v. Hall, 916 F.2d 1510, 1520 (11th Cir. 1990) (forcing defendant, who had only visited Florida eight times, to adjudicate plaintiffs' libel suit would impose an undue burden). Second, because HealthMarkets, Inc. has no interaction with its citizens, Alabama has little interest in protecting its citizens' rights against HealthMarkets, Inc., and thus, Alabama has no interest in adjudicating this dispute. See Future Tech. Today, Inc., 218 F.3d at 1251 (Florida did not have a strong state interest "in haling people into Florida courts from all over the country for entering into one service arrangement, over the telephone without ever setting foot in Florida.") Third, dismissal of HealthMarkets, Inc. will not prevent Plaintiffs from obtaining convenient and effective relief in Alabama because the defendants with whom Plaintiffs allege that they conducted business will remain defendants to the Complaint. (See generally Compl.) Finally, the "fundamental social policies" and the "shared interest of the several states" will only be furthered by respecting HealthMarkets, Inc.'s separate corporate form and its right to due process, including not being haled into Court in a place it has no contacts. See S. Ala. Pigs, LLC, 305 F. Supp. 2d at 1258-59 (dismissing defendant because of lack of personal jurisdiction where plaintiff attempted to

establish jurisdiction based on alter ego theory, but court rejected contention finding that plaintiffs presented no evidence to pierce the corporate veil).

In sum, because this Court has neither specific or general jurisdiction over HealthMarkets, Inc., and because an exercise of personal jurisdiction over HealthMarkets, Inc. would offend traditional notions of fair play and substantial justice, this Court should dismiss with prejudice Plaintiffs' Complaint against HealthMarkets, Inc. pursuant to Rule 12(b)(2).

## III.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST HEALTHMARKETS, INC. PURSUANT TO RULES 9(B) AND 12(B)(6).

In the alternative, subject to and without waiving HealthMarkets, Inc.'s foregoing motion to dismiss pursuant to Rule 12(b)(2) or consenting to jurisdiction in Alabama, HealthMarkets, Inc. moves to dismiss all of Plaintiffs' claims asserted against it pursuant to Rules 12(b)(6) and 9(b).

### A.   Standard for Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45 (1957). When, on the basis of a dispositive issue of law, no construction of the factual allegations of a complaint will support the cause of action, dismissal of the complaint is appropriate. See Powell v. United States, 945 F.2d 374 (11th Cir. 1991). "In ruling on a motion to dismiss, 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.'" Securities and Exch. Comm'n v. Scrushy, 2005 WL 3279894, at * 1 (N.D. Ala. 2005)(quoting Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003). "[F]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Id. at * 2.

**B.**   **Plaintiffs' Breach of Contract Claims Fail As a Matter of Law Because HealthMarkets, Inc. Was Not a Party to the Alleged Contract.**

Plaintiffs' breach of contract claim against HealthMarkets, Inc. fails as a matter of law because HealthMarkets, Inc. was not a party to the alleged contract. The predicate for a breach of contract claim is the "existence of a valid contract binding the parties in the action." Jones v. Alfa Mut. Ins. Co., 875 So. 2d 1189, 1195 (Ala. 2003). Plaintiffs do not allege that HealthMarkets, Inc. was a party to *any* contract with Plaintiffs. (See generally Compl.) To the contrary, Plaintiffs specifically allege that they purchased policy number 09053629435. (See id. ¶ 11.) HealthMarkets, Inc. is not a party to that agreement. (Exhibit 2, hereto). Because HealthMarkets, Inc. cannot be held liable for breaching a contract to which it was not a party, Plaintiffs' breach of contract claim against HealthMarkets, Inc. should be dismissed with prejudice. See Pate v. Rollison Logging Equip., Inc., 628 So. 2d 337, 342-43 (Ala. 1993) (non-party to a contract cannot be held liable for breach).

**C.**   **HealthMarkets, Inc. Cannot Be Liable For Bad Faith Since HealthMarkets, Inc. Is Not A Party To The Insurance Agreement.**

The tort of bad faith does not lie against a party who is not a party to the insurance agreement. See McDonald v. Integon Gen'l Ins. Co., 1996 U.S. Dist. Lexis 16890 (S.D. Ala. 1996); Vari-Care, Inc. v. ITT Hartford Insurance Group, 1994 U.S. Dist. Lexis 10326 (S.D. Ala. 1994)(bad faith claim could not be maintained against non-party to the insurance contract); Ligon Furniture Co. v. O. M. Hughes Insurance, Inc., 551 So. 2d 283 (Ala. 1989)(agent was not a party to the insurance contract; thus, plaintiff could not recover on the breach of contract claim; summary judgment affirmed on bad faith claim, since it only applies to parties to the insurance contract). The attached certificate of insurance clearly establishes that MEGA is the insurer

under the contract at issue. Therefore, Plaintiffs cannot state a bad faith claim against HealthMarkets, Inc.

**D.     Counts Three, Four and Five – Plaintiffs Have Not Alleged Any Fraud With The Requisite Particularity.**

The Plaintiffs' fraud claims in Counts Three and Five fail because they do not identify any misstatement, the place or time of the statement, the speaker, the manner in which Plaintiffs were misled and what the Defendants obtained as a result. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated *with particularity*." FED. R. CIV. P. 9(b)(emphasis added). To satisfy Rule 9(b), the complaint must set forth: (1) the content of the precise statement or omission; (2) who made, or failed to make, such statement; (3) where the statement was, or should have been, made; (4) when the statement was, or should have been, made; and, (5) what the defendants gained as a result. Scrushy, WL at *2 (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997)). In other words, "general, conclusory allegations of fraud" are inadequate. Morrow v. Green Tree Servicing, L.L.C., 360 F. Supp. 2d 1246, 1250 (M.D. Ala. 2005) (citing Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 568 (11th Cir. 1994)).

Moreover, "[c]ourts interpret Rule 9(b) as requiring a complaint filed against multiple defendants to distinguish among defendants and specify their respective role in the alleged fraud." McAllister Towing & Transp. Co., Inc. v. Thorns Diesel Serv., Inc., 131 F. Supp. 2d 1296, 1301 (M.D. Ala. 2001) (where complaint did not contain specific allegations with respect to each separate defendant, plaintiff failed to plead a claim for fraud). Thus, "a plaintiff does not satisfy [the Rule 9 (b)] requirement by simply grouping the defendants together by vaguely alleging that the 'defendants' made the alleged fraudulent statements." Id.; see also Sky Techs. Partners, L.L.C. v. Midwest Research Inst., 125 F. Supp. 2d 286, 299 (S.D. Ohio 2000)

(complaint was deficient under Rule 9(b) where the plaintiff failed to identify those employees or representatives of the defendants who made the allegedly fraudulent statements).

Plaintiffs' allegations of fraud and fraudulent suppression in the instant case do not satisfy any of these requirements of Rule 9(b). First, the Plaintiffs do not identify the content of any precise statement or omission. The Plaintiffs allege only that in February 2003 "Defendants represented to the plaintiffs that the policy would provide coverage in the event of medical circumstances such as those described below" and "that any claims on the policy would be administered in such a matter as to provide the greatest possible coverage to the insureds." (Compl., ¶ 12). In Count Three, Plaintiffs also vaguely aver "Defendants continuously represented to the Plaintiffs that Defendants would provide the Plaintiffs the insurance coverage they had paid and contracted for and would act in good faith and pay claims covered under the insurance provided." (Compl., ¶ 40). Such allegations clearly do not meet Rule 9(b)'s heightened requirements.

Second, these allegations make no attempt to specify which of the many Defendants allegedly made any misrepresentations or failed to disclose a material fact. (See generally Compl.). Rather, Plaintiffs allege only that unspecified "Defendants" made misrepresentations or failed to disclose facts. (See e.g., Compl., ¶ 12)("The Defendants represented…Defendants further represented…"), ¶ 48 ("Defendants fail to disclose…"), ¶ 40 ("Defendants…continuously represented to the Plaintiffs…")). Due to this failure alone, Plaintiffs' claims for fraud and fraudulent suppression should be dismissed. See McAllister Towing & Transp. Co., Inc., 131 F. Supp. 2d at 1301.

In addition to failing to specify which of the many "Defendants" in this action purportedly misrepresented or failed to disclose a material fact, Plaintiffs do not allege when or

14

where these purported misrepresentations or omissions occurred. (See generally Compl.).

Indeed, the only specific allegations of a particular statement about the Plaintiffs' transaction are

summarized in paragraph twelve. In that paragraph, Plaintiffs do not even allege what statement

was false. (See id. ¶¶ 12). Because no facts regarding fraud or suppression are alleged with any

particularity, let alone the particularity required by Rule 9, Plaintiffs' claims for fraud and

fraudulent suppression fail and are due to be dismissed. See Brooks, 116 F.3d 1371; Friedlander

v. Nims, 755 F.2d 810, 813-14 (11th Cir. 1985) (dismissal for failure to comply with Rule 9(b);

Cooper, 19 F.3d at 568 (Rule 9(b) not satisfied where plaintiff failed to allege details of

fraudulent acts, when they occurred, and who engaged in them); Morrow, 360 F. Supp. 2d at

1250-51 (same).

>   **E.    Plaintiffs' Fraud Claims Are Promissory And Fail To Allege That Any
>           Defendant Had The Intent Not To Perform At The Time Of The Statement
>           And Intended To Deceive The Plaintiffs.**

The Plaintiffs' allegations pertain to future events, such as what the insurance "would

provide," and are therefore promissory statements. Promissory fraud claims contain additional

elements that Plaintiffs must aver, which are (1) that the speaker, at the time the statement was

made, did not intend to perform in the future and (2) that the speaker had a present intent to

deceive. Bethel v. Thorn, 757 So. 2d 1154, 1159 (Ala. 2000). Plaintiffs' claims should be

dismissed because they do not allege any facts pertaining to these elements. Bethel is instructive

because the Court dismissed four promissory fraud claims and found two were not properly

pleaded and two were sufficiently plead. As to the insufficient claims, the plaintiff had alleged

that defendants repeatedly misrepresented that they were capable of performing contracts and

would timely deliver the product at issue. Analyzing these allegations, the Court affirmed the

motion to dismiss and held that such allegations failed to allege facts showing that defendants

did not intend to perform and in fact intended to deceive plaintiffs when the promises were made. Id. at 1160-61.

In the present case, each of the Plaintiffs' allegations of fraud set forth alleged promises by Defendants. Like Bethel, however, Plaintiffs fail to allege these critical additional elements for viable promissory fraud claims. For this reason, Counts Three, Four and Five should be dismissed.

**F.    Claims Arising From Any February 2003 Statements Are Time-Barred.**

Any fraud claims arising from February 2003 statements are clearly time-barred under Alabama's two year statute of limitations and Plaintiffs have alleged no facts to fall within the fraud savings provision. See ALA. CODE §§ 6-2-38(l) and 6-2-3 (2005); Smith v. Nat'l Sec. Ins. Co., 860 So. 2d 343, 345 (Ala. 2003). In Smith, the Alabama Supreme Court affirmed the trial court's Rule 12(b)(6) dismissal of very similar fraud claims to those presented here on statute of limitations grounds. In Smith, the plaintiff alleged that a health insurance salesman misrepresented during the policy sale that "the policy would cover all of her minor son's medical bills...". Similar to this case, the Smith plaintiff brought two fraud claims and one suppression claim approximately three and one-half years after the alleged point-of-sale statements, and further alleged the fraud was "of a continuing nature." 860 So. 2d at p. 346. In upholding the dismissal, the Alabama Supreme Court held:

> "When, as in this case, the plaintiff's complaint on its face is barred by the statute of limitations, the complaint must also show that he or she falls within the savings clause of § 6-2-3. Amason v. First State Bank of Lineville, 369 So. 2d 547 (Ala. 1979). See Associates Financial Services Co. v. First National Bank, 292 Ala. 237, 292 So. 2d 112 (1974). Rule 9 of the Alabama Rules of Civil Procedure requires that fraud be alleged 'with particularity.' Garrett v. Raytheon Co., 368 So. 2d 516 (Ala. 1979)."

860 So. 2d at 346 (quoting Miller v. Mobile Cty. Bd. of Health, 409 So. 2d 420, 422 (Ala. 1981).

To fall within the savings' provision of the statute of limitations, the Court held that the complaint must allege facts or circumstances by which defendants concealed the cause of action, and must show what prevented the plaintiffs from discovering the facts surrounding the fraud. 860 So. 2d at 347. The Court pointed out that Smith's complaint failed to allege any such facts. Moreover, the Court found that the general reference to the fraud being "of a continuous nature" did not cure the deficiencies. Id.; see also Miller v. Mobile County Bd. of Health, 409 So. 2d 420 (Ala. 1981)(affirmed fraud dismissal under Rule 9 and 12 based on failure to plead facts to save claims from statute of limitations bard.); Lowe v. East End Memorial Hospital & Health Centers, 477 So. 2d 339 (Ala. 1985)(same).

In the present case, the allegations of fraud are nearly identical, but even less detailed, than the inadequate allegations in Smith. In paragraph 12, the Plaintiffs allege that Ms. Tranchina visited their home and made an insurance proposal. Plaintiffs then allege that "Defendants" made representations regarding coverage. Finally, Plaintiffs allege "continuous" representations by Defendants regarding the payment of claims and the provision of insurance coverage. Any claims of fraud arising from a February 2003 conversation with any Defendant are clearly time-barred after February 2005. Plaintiffs filed their lawsuit on March 2, 2006. Since the Plaintiffs did not allege any facts which would save these claims from the two-year time bar, Counts Three, Four, Five and Six should be dismissed.

### G.     Count Four - Plaintiffs Have Not Stated a Claim for Suppression.

The facts alleged in the Count Four do not state a claim against MEGA for suppression. Alabama law is clear that there is no duty to disclose because an insurer such as MEGA does not stand in a confidential relationship with an insured. See State Farm Fire & Cas. Co. v. Owen, 729 So. 2d 834, 842 (Ala. 1998). In Owen, 729 So. 2d at 842, an action filed by an insured against

17

her property insurer, the Court held that the existence of a duty to disclose is a question of law and that the insurer owed no duty to disclose that premiums would be based on the appraisal value of the plaintiff's diamond ring, even though the insurer would pay no more than the replacement cost. See Owen, 729 So. 2d at 839-42. After determining that the duty to disclose can arise from a confidential relationship or from special circumstances, the court considered whether, as a matter of law, the insurer had a duty to disclose. See id. In doing so, the court concluded that there was no such duty:

> In the first instance, the obligation to communicate could arise from the confidential relations of the parties. [Plaintiff] does not contend that her relationship with State Farm was a fiduciary relationship, nor would the evidence in this case support such a finding. *See Hardy v. Blue Cross & Blue Shield,* 585 So. 2d 29 (Ala. 1991); *King v. National Foundation Life Ins. Co.,* 541 So. 2d 502 (Ala. 1989). Thus, the imposition of a duty of disclosure could have been justified only if this case presented "special circumstances" mandating disclosure.

Id. at 842.

The Alabama Supreme Court then concluded that no special circumstances or confidential relationship imposed a duty upon an insurer to disclose to its insured how premiums would be calculated and claims would be paid. Owen, 729 So. 2d at 842-43. In concluding that no such duty existed, the Court reasoned:

> To uphold [plaintiff's] claim, we would have to rule that it is the responsibility of every insurer at the point of sale to explain fully to potential customers the insurer's internal procedures, its ratemaking process, and its business practices. To impose that responsibility strikes us as highly impractical, and it is a responsibility we have not imposed in the past.

Id. at 843 (citation omitted). The Court further found that an allegation that the insurer has superior knowledge was not sufficient to create a duty to disclose. See id. (no duty to disclose internal procedures and practices because "in practically any transaction, particularly those

involving specialized areas like insurance, one party will have greater knowledge than the other"); see also Surrett v. TIG Premier Ins. Co., 869 F. Supp. 919, 925 (M.D. Ala. 1994) ("Superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information.").

The case of King v. National Foundation Life Ins. Co., 541 So. 2d 502 (Ala. 1989), cited by the Owen court, also supports this proposition. In King, a first party insurance case brought against a medical insurer, the court held that there was no confidential relationship between the insurer and insured to support plaintiffs' claims for fraudulent suppression. King, 541 So. 2d at 505-06. Furthermore, the King court found that an insurer's silence as to internal operating procedures did not amount to fraud under Alabama law. King, 541 So. 2d at 505-06; see also Hardy, 585 So. 2d 29. Both the King and Owen cases rejected as a matter of law the argument that an insurer has any confidential relationship with an insured and owes any duty to disclose facts related to its internal operating procedures. See King, 541 So. 2d at 505-06; Owen 729 So. 2d at 843.

Applying those principles to the present case, none of Plaintiffs' allegations elevates their insured/insurer relationship with MEGA to a confidential one or one involving "special circumstances" with HealthMarkets, Inc. Plaintiffs simply claim that they applied for a certificate of health insurance coverage following a meeting with Defendant Tranchina in February 2003. (Compl., ¶ 12). The Plaintiffs allege only that "Defendants represented the Plaintiffs that the policy would provide coverage in the event of medical circumstances such as those described below" and "that any claims on the policy would be administered in such a manner as to provide the greatest possible coverage to the insured." (Compl., ¶ 12). The Complaint does not articulate with any specificity any other fact which would create a duty to

disclose for HealthMarkets, Inc. Moreover, since insurers have no duty to disclose internal

operating procedures, these allegations, even if true (which they are not), do not state a claim for

suppression against HealthMarkets, Inc. which is merely the parent company of the insurer. See

King, 541 So. 2d at 505-06.

 To state a claim for fraudulent suppression, a plaintiff must show the defendant had a

duty to disclose an existing material fact either because of a confidential relationship between the

plaintiff and the defendant, or because of the particular circumstances of the case. See Booker v.

United Am. Ins. Co., 700 So. 2d 1333, 1339 (Ala. 1997) (duty to disclose essential element of

fraudulent suppression claim). Whether a party has a duty of disclosure is initially an issue of

law for the court to determine. See Owen, 729 So. 2d at 841-42. Under Alabama law, there is no

duty to disclose facts when information is not requested, and mere silence does not constitute

fraud in the absence of a confidential relationship. King, 541 So. 2d at 505-06; see also ALA.

CODE § 6-5-102 (1975) ("The obligation to communicate may arise from the confidential

relations of the parties or from the particular circumstances of the case."). For this additional

reason, Count Four should be dismissed.

### H.   Plaintiffs' Civil Conspiracy Claims Fail Because MEGA Did Not Conspire With Any Other Defendant to Commit an Underlying Tort.

 Plaintiffs' civil conspiracy claim against HealthMarkets, Inc. fails as a matter of law

because the Complaint demonstrates that HealthMarkets, Inc. did not conspire with any other

defendant to commit a wrongful act. "A conspiracy cannot exist in the absence of an underlying

tort." Willis v. Parker, 814 So. 2d 857, 867 (Ala. 2001) "[L]iability for civil conspiracy rests

upon the existence of an underlying wrong and when the underlying wrong provides no cause of

action, then neither does the conspiracy." Jones v. BP Oil Co., Inc., 632 So. 2d 435, 439 (Ala.

1993). As demonstrated above, since Plaintiffs' fraud claims should be dismissed, their conspiracy claim likewise fails.

## IV. CONCLUSION

Because this Court cannot exercise personal jurisdiction over HealthMarkets, Inc., this Court should dismiss with prejudice Plaintiffs' Complaint against HealthMarkets, Inc. in its entirety, pursuant to Rule 12(b)(2). In the alternative, subject to this Court's ruling on personal jurisdiction, and without waiving its foregoing motion to dismiss pursuant to Rule 12(b)(2) or consenting to jurisdiction in Alabama, HealthMarkets, Inc. respectfully requests, pursuant to Rules 9(b) and 12(b)(6), that the Court dismiss with prejudice Plaintiffs' Complaint against it because Plaintiffs have failed to state a claim upon which relief can be granted.

Defendant HealthMarkets, Inc. further requests that this Court grant such other relief to which it is justly entitled.

/s/ E. Luckett Robinson, II
HENRY A. CALLAWAY, III (CALLH4748)
E. LUCKETT ROBINSON, II (ROBIE6110)
RODNEY R. CATE (CATER8568)
Attorneys for HealthMarkets, Inc.

HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601
Tel:     (251) 432-5511
Fax:    (251) 694-6375

## CERTIFICATE OF SERVICE

I hereby certify that I have, on April 28, 2006, served a copy of the foregoing pleading on all counsel of record by electronic service and by placing a copy of same in United States Mail, properly addressed and first class postage prepaid, as follows:

Thomas O. Sinclair
2100-A SouthBridge Parkway, Suite 450
Birmingham, Alabama 35209

James W. Lampkin, II
Pamela A. Moore
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602

Allen G. Woodard
WOODARD, PATEL & SLEDGE
1213 East Three Notch Street
Andalusia, Alabama 36420


/s/ E. Luckett Robinson, II

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID PAHER and                                )
PHILENA PAHER                                  )
                                               )
          Plaintiffs,                          )
                                               )
v.                                             )          CIVIL ACTION NO.:  2:06cv297-SRW
                                               )
UICI;                                          )
MEGA LIFE & HEALTH INSURANCE                   )
COMPANY;                                       )
NATIONAL ASSOCIATION FOR THE                   )
SELF EMPLOYED;                                 )
STEPHANIE TRANCHINA;                           )
and FICTITIOUS DEFENDANTS                      )
"A," "B," and "C," whether singular or         )
plural, are those other persons,               )
corporations, firms, or other entities         )
whose wrongful conduct caused or               )
contributed to the cause of the injuries       )
and damage to the plaintiff, all of            )
whose true and correct names are               )
unknown to the at this time,                   )
but which will be substituted by               )
amendment when ascertained,                    )

          Defendants.

## AFFIDAVIT OF MARK D. HAUPTMAN

STATE OF TEXAS:

COUNTY OF TARRANT:

          I, MARK D. HAUPTMAN, declare as follows:

1.        I am over 18 years of age, and am competent to testify in this matter.  I have personal

knowledge of the facts set forth herein, which are known by me to be true and correct, and if

called as a witness, I could and would competently testify thereto.  This affidavit is submitted in

support of the Motion to Dismiss the Complaint filed by HealthMarkets, Inc., formerly named


EXHIBIT
1

UICI, by Plaintiffs in the above-styled case. UICI changed it name to HealthMarkets, Inc. on April 17, 2006.

2.    I am the Vice President and Chief Accounting Office of Defendant HealthMarkets, Inc. ("HealthMarkets" herein). HealthMarkets is a holding company incorporated in the State of Delaware, with its principal place of business in the State of Texas.

3.    HealthMarkets is the parent company of HealthMarkets , L.L.C., which is the parent company of The MEGA Life and Health Insurance Company ("MEGA"). MEGA is a wholly owned, independently operated subsidiary of HealthMarkets, L.L.C.

4.    HealthMarkets is not an insurer and does not participate in the business of insurance. HealthMarkets is not registered as an insurer in Alabama or any other state. HealthMarkets is not registered to do business in Alabama with the Secretary of State. HealthMarkets does not pay Alabama taxes and does not own any property in the State of Alabama. HealthMarkets has no employees in Alabama. HealthMarkets has no officers that are residents of Alabama. HealthMarkets has not appointed a registered agent for service of process in Alabama. HealthMarkets does not have a telephone listing in Alabama. HealthMarkets has never conducted any business in Alabama.

5.    HealthMarkets, formerly known as UICI until April 17, 2006, was served with the Summons and Complaint in this matter through one of its officers in the state of Texas.

6.    HealthMarkets was not involved in the marketing, sale, underwriting, or administration of any insurance coverage issued to David and Philena Paher or to any other Alabama resident.

7.    HealthMarkets did not participate in any way in the handling or decisions related to the claims for benefits arising from the medical expenses incurred by David and Philena Paher.

2

8.    In its history as a corporate "person" for jurisdictional purposes, HealthMarkets has never purposefully directed any of its activities toward Alabama.

9.    HealthMarkets does not employ any insurance agents or association enrollers. HealthMarkets has no employment relationship with Stephanie Tranchina. Further, HealthMarkets has never controlled or directed the activities of Stephanie Tranchina or retained a right of control or direction over her activities.

10.    HealthMarkets has no ownership interest in the National Association for the Self-Employed.

11.    HealthMarkets has neither consented to jurisdiction nor appeared in this matter. I make this Affidavit as a special appearance only in support of Defendant HealthMarkets' Motion to Dismiss Plaintiffs' Complaint.

I declare under the penalty of perjury under the laws of the State of Alabama and the United State of America that the foregoing is true and correct.

Executed on April 28, 2006, at North Richland Hills, Texas.

FURTHER AFFIANT SAYETH NOT.


_____
MARK D. HAUPTMAN


SUBSCRIBED AND SWORN TO before me, the undersigned authority on this 28 day of April, 2006.


_____
Notary Public, State of Texas
My Commission Expires: October 4 2009
461655

CINDY A. STALCUP
Notary Public, State of Texas
My Commission Expires
October 04, 2009

3

## THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

### BASIC HOSPITAL/MEDICAL-SURGICAL EXPENSE CERTIFICATE

### IMPORTANT NOTICE ABOUT STATEMENTS IN THE ENROLLMENT APPLICATION

The attached enrollment application is a part of this Certificate. Please read it and check it carefully. This Certificate is issued on the basis that Your answers are correct and complete. If it is not complete or has an error, please let Us know within 10 days. An incorrect enrollment application may cause Your coverage to be voided, or a claim to be reduced or denied.

### 10 DAY RIGHT TO EXAMINE THE CERTIFICATE

It is important to Us that You understand and are satisfied with the coverage being provided to You. If You are not satisfied that this coverage will meet Your insurance needs, You may return this Certificate to Us at Our administrative office in North Richland Hills, Texas, within 10 days after You receive it. Upon receipt, We will cancel Your coverage as of the Certificate Date, refund all premiums paid and treat the Certificate as if it were never issued.

### RENEWABILITY

This Certificate is guaranteed renewable, subject to the Company's right to discontinue or terminate the coverage as provided in the TERMINATION OF COVERAGE section of this Certificate. The Company reserves the right to change the applicable table of premium rates on a Class Basis. The premium for the Certificate may change in amount by reason of an increase in the age of an Insured Person.

This Certificate is a legal contract between You and Us. **PLEASE READ YOUR CERTIFICATE CAREFULLY!**

*Peggy J. Simpson*
SECRETARY

*Philip T Myh*
PRESIDENT

### IMPORTANT MESSAGE TO OUR CERTIFICATEHOLDERS

Canceling health insurance coverage and purchasing new coverage, on account of encouragement by any agent, is called replacement. Some states have laws which forbid any misrepresentation by any agent that may occur at the time of replacement. Beware of anyone who encourages You to replace this coverage without allowing You time to carefully investigate the replacement proposal, or discourages You from talking with a representative of the Company whose coverage is being recommended for replacement. For Your protection, if You are encouraged to replace this coverage, We urge You to seek advice and to take the time to investigate any recommendation.

25875-C

EXHIBIT
2

-1-

DUPLICATE

CMCXX34001

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| CERTIFICATE SCHEDULE | 3 |
| DEFINITIONS | 5 |
| EFFECTIVE DATE OF COVERAGE | 9 |
| PREMIUMS | 10 |
| TERMINATION OF COVERAGE | 10 |
| CASE MANAGEMENT | 12 |
| BENEFITS | 13 |
| EXCLUSIONS AND LIMITATIONS | 14 |
| COORDINATION OF BENEFITS | 15 |
| GENERAL PROVISIONS | 17 |

25875-C

DUPLICATE

CMCXX34001

## CERTIFICATE SCHEDULE

COVERAGE IS PROVIDED UNDER GROUP POLICY NO.:   00384

ISSUED TO GROUP POLICYHOLDER:   NASE Group Insurance Trust

PRIMARY INSURED:   DAVID A PAHER

COVERED DEPENDENTS:   PHILENA J        NELEAH

CERTIFICATE NUMBER:   053629435                    CERTIFICATE DATE:   03/05/2003

INITIAL PREMIUM:       $391.00                          MODE OF PAYMENT: MONTHLY

### SCHEDULE OF BENEFITS

LIFETIME MAXIMUM AMOUNT:                          $1,000,000

AGGREGATE MAXIMUM AMOUNT:                     $500,000

DEDUCTIBLE
Per Insured Person, per each Period of Confinement
in a Hospital or Outpatient Surgery Facility:             $1,000

| BENEFITS | Coinsurance | Maximum Benefit |
|---|---|---|
| Hospital Room and Board Amount | 100% | up to $500 per day |
| Hospital Intensive Care/ Cardiac Care Unit (limited to 90 days per Period of Confinement) | 100% | up to $1,200 per day |
| Miscellaneous Hospital Inpatient Charges | 80% | up to $24,000 |
| Physician Visits while Hospital Confined (limited to one visit per day) | 100% | up to $50 per day |
| Surgeon Benefit | 80% | up to $24,000 |
| Assistant Surgeon Benefit | | 20% of the amount paid to surgeon, up to $4,800 |
| Anesthesiologist Benefit | | 30% of the amount paid to surgeon, up to $7,200 |
| Outpatient Surgery Facility Charges | 80% | up to $2,000 |

25875-C                                -3-              DUPLICATE                 CMSAL01A001

## CERTIFICATE SCHEDULE (Continued)

| BENEFITS | Coinsurance | Maximum Benefit |
|---|---|---|
| **Ambulance Transport**<br>**(payable only when Hospital Confined)** | 100% | up to $250 * per trip |
| *Effective 8/17/05 or Your Certificate Date, whichever is later,<br>Ambulance Transport Maximum Benefit | | up to $500 per trip |
| **All Other Covered Expenses not**<br>**Specifically listed in this Schedule**<br>**of Benefits and not specifically excluded** | 80% | |

DUPLICATE

# CERTIFICATE SCHEDULE

## SCHEDULE OF BENEFITS (Continued)

| RIDER BENEFITS\OPTIONAL RIDERS | Amount of Benefit |
|---|---|
| **EMERGENCY ROOM BENEFIT RIDER** | |
| Coinsurance | 80% |
| Copayment, per visit, per Insured Person | $250 |
| Maximum Benefit Amount, per Occurence, per Insured Person | $1,000 |
| **PHYSICIAN'S OFFICE VISIT BENEFIT RIDER*** | |
| Copayment, per visit | $15 |
| Daily Maximum Benefit, per visit | $50 |
| Maximum Number of visits | |
| Per Insured Person, per calendar quarter | 1 visit |
| Per Family, per Calendar Year | 16 visits |

*Exclusion No. 33, as shown in the EXCLUSIONS and LIMITATIONS section of this Certificate, does not apply to this Rider.

| **AMBULATORY CARE RIDER** | |
|---|---|
| Lifetime Maximum Amount, Per Insured Person | $100,000 |
| Deductible Per Insured Person, Per Calendar Year | $500 |
| Coinsurance | 80% |
| Maximum Benefit Amount, per Insured Person, per 24 hours | $500 |
| | |
| **AIR AMBULANCE RIDER** | YES |
| **CHEMOTHERAPY/RADIATION THERAPY RIDER** | |
| Lifetime Maximum Amount | $100,000 |
| Coinsurance | 80% |
| Daily Maximum Benefit | $1,250 |

**ACCUMULATED COVERED EXPENSE AMOUNT**

Once an Insured Person incurs $75,000 of Covered Expenses while Confined to a Hospital or in an Outpatient Surgery Facility during a Period of Confinement, Covered Expenses incurred during the remainder of that Period of Confinement while Confined to a Hospital or in an Outpatient Surgery Facility will be paid at 100% up to the Aggregate Maximum Amount shown on the Schedule of Benefits.

| **PRESCRIPTION DRUG RIDER** | YES |
|---|---|

DUPLICATE

## ENDORSEMENT

Attached to and made a part of Policy/Certificate No.  053629435

In consideration of issuance, the Policy/Certificate is hereby amended and modified as follows:

CRITICAL CARE BENEFIT AMOUNT IS REDUCED TO $3,000 DUE TO MEDICAL REASONS.

PHILENA J PAHER-----SHALL NOT COVER NOR SHALL ANY INDEMNITY BE PAYABLE FOR ENDOMETRIOSIS.

anything in said Policy/Certificate to the contrary notwithstanding.  This Endorsement is effective on the Effective Date of the Policy/Certificate and shall expire concurrently with said Policy/Certificate unless otherwise terminated.

In Witness Whereof, MEGA LIFE AND HEALTH INSURANCE COMPANY has issued this Amendment to the Policy/Certificate.

_____
APPLICANT SIGNATURE (if required)

_____
DATE

*Peggy S. Simpson*
SECRETARY

*Philip T. Myh*
PRESIDENT

HEND96

XXXXX05002

DUPLICATE

## DEFINITIONS

**Aggregate Maximum Amount** means the maximum amount payable under this Certificate and its Riders, if any, for any one covered Injury or Sickness for each Insured Person, occurring while coverage is in effect under this Certificate for such person. The Aggregate Maximum Amount is shown in the CERTIFICATE SCHEDULE. This amount is included in and part of the Lifetime Maximum amount for each Insured Person.

**Ambulance** means a ground vehicle which is licensed as required by law, as an Ambulance, and is equipped to transport Sick or Injured people.

**Attained Age** means the Insured Person's age on the most recent annual anniversary of the Certificate.

**Calendar Year** means a twelve month period which begins at 12:01 a.m. on January 1 of any year and ends at 12:00 midnight on December 31 of that year.

**Certificate** means the written description of coverage provided to You under the Group Policy.

**Class Basis** means the classification by which each Insured Person's rates are determined. We will not and cannot change the rates on this Certificate unless rates are changed on all Certificates issued on the same Class Basis.

**Coinsurance** means the shared percentage of Covered Expenses after satisfying the Deductible. The Coinsurance percentage We pay is shown in the CERTIFICATE SCHEDULE.

**Complications of Pregnancy** means:

1. Conditions requiring Hospital Confinement or treatment in an Outpatient Surgery Facility (when the pregnancy is not terminated) whose diagnoses are distinct from pregnancy, but are adversely affected by pregnancy, including but not limited to: non-elective cesarean section, acute nephritis, nephrosis, cardiac decompensation, missed abortion, and similar medical and surgical conditions of comparable severity; or
2. Termination of ectopic pregnancy, and spontaneous termination of pregnancy occurring during a time that a viable birth is not possible.

Complications of Pregnancy do not include false labor, occasional spotting, Physician prescribed rest during the period of pregnancy, morning sickness, hyperemesis gravidarum, pre-eclampsia, and similar conditions associated with the management of a difficult pregnancy not constituting a nosologically distinct complication.

**Confined/Confinement** means an Insured Person's Medically Necessary admission to and subsequent continued stay in a Hospital or Skilled Nursing Facility as an overnight bed patient and a charge for room and board is made.

**Consultation** means evaluation, diagnosis, or medical advice given without the necessity of a personal examination or visit.

**Cosmetic Surgery** means the surgical procedures for the sole purpose of improvement of appearance, which does not effect a substantial improvement or restoration of bodily function, except:

1. Reconstructive Surgery incidental to or following Surgery resulting from trauma, infection or other disease of the involved part; or
2. Reconstructive Surgery due to a congenital disease or anomaly of a newborn child which has resulted in a functional defect.

The condition which necessitates the Surgery must occur while coverage is in force and coverage remains in force through the date of Surgery.

**Covered Dependent** means an Eligible Dependent whose coverage has become effective under this Certificate and has not terminated.

**Covered Expenses** means Usual and Customary Charges for the services, supplies, care or treatment covered under this Certificate which are incurred by an Insured Person as a result of Injury or Sickness and for which the Insured Person is legally obligated to pay and are not otherwise excluded or limited herein.

DUPLICATE

The term "Hospital" does not include:

1. A convalescent, nursing, rest or rehabilitative facility; a home for the aged; a facility for the care and treatment of drug addicts and alcoholics; or a special ward, floor or other accommodation for convalescent, nursing, rehabilitation, ambulatory or extended care purposes; or hotel units, residential annexes or nurse administered units in or associated with a hospital; or
2. Any military or veteran's hospital, soldier's home or any hospital contracted for or operated by the Federal Government or any agencies thereof for the treatment of members or former members of the Armed Forces, unless the Insured Person is legally required to pay for services in the absence of this insurance coverage.

**Immediate Family** means the spouse, parent, son, daughter, brother or sister of the Insured Person.

**Injury** means bodily harm caused by an accident resulting in unforeseen trauma requiring immediate medical attention and is not contributed to, directly or indirectly, by a Sickness. The Injury must occur after the Insured Person's coverage has become effective and while the coverage is in force.

**Insured Person** means You or a Covered Dependent under this Certificate.

**Intensive Care/Cardiac Care Unit** means that part of a Hospital which:

1. Is segregated from the rest of the Hospital facilities;
2. Is exclusively reserved for critically ill patients who require audio-visual observation and/or cardiac monitoring as prescribed by the attending Physician; and
3. Provides room and board, specialized registered graduate professional nurses (R.N.), and special life saving equipment and supplies.

**Lifetime Maximum Amount** means the maximum amount payable under this Certificate and its Riders, if any, for all Covered Expenses combined, for each Insured Person. Any and all benefit amounts paid by Us will accumulate toward the Lifetime Maximum Amount from the Certificate Date. The Lifetime Maximum Amount is shown in the CERTIFICATE SCHEDULE.

**Maximum Benefit** means the maximum amount payable under this Certificate for each Insured Person for each Period of Confinement, unless otherwise noted on the CERTIFICATE SCHEDULE. The maximum benefit is shown in the CERTIFICATE SCHEDULE.

**Medical Emergency** means the sudden onset of a medical condition for which the Insured Person seeks immediate medical treatment at the nearest available facility. The condition must be one which manifests itself by acute symptoms which are sufficiently severe that without immediate medical attention could reasonably be expected to result in:

1. Placing the Insured Person's health in serious jeopardy;
2. Serious impairment of bodily functions; or
3. Serious dysfunction of any bodily organ or part.

**Medically Necessary or Medical Necessity** means that a service or supply is necessary and appropriate for the diagnosis or treatment of an Injury or Sickness based on generally accepted current medical practice. A service or supply will not be considered Medically Necessary if:

1. It is provided only as a convenience to the Insured Person or provider;
2. It is not appropriate treatment for the Insured Person's diagnosis or symptoms;
3. It exceeds (in scope, duration or intensity) that level of care which is needed to provide safe, adequate and appropriate diagnosis or treatment; or
4. It is Experimental or Investigational Medicine.

The fact that a Physician may prescribe, order, recommend or approve a service or supply does not, of itself, make the service or supply Medically Necessary.

**Medicare** means the Health Insurance for the Aged Act, Title XVIII of the Social Security Amendments of 1965, as amended.

25875-C

DUPLICATE

CMPXX34001

**Total Disability or Totally Disabled** means:

1. With respect to You, You are unable to engage in any employment or occupation for which You are qualified by reason of education, training or experience and are not in fact engaged in any employment or occupation for wage or profit; and
2. With respect to any other person under the Group Policy, Confinement as a bed patient in a Hospital.

**Usual and Customary Charges** means charge which is the smallest of:

1. The actual charge;
2. The charge usually made for the Covered Expense by the provider who furnishes it;
3. The prevailing charge made for a Covered Expense in a geographical area by those of similar professional standing.

**We, Us and Our** means The MEGA Life and Health Insurance Company.

**You, Your, Yours** means the primary insured named in the Certificate Schedule whose coverage has become effective and has not terminated.

EFFECTIVE DATE OF COVERAGE

**Beginning of Coverage**

We require evidence of insurability before coverage is provided. Once We have approved Your enrollment application based upon the information You provided therein, the Effective Date of Coverage for You and those Eligible Dependents listed in the application and accepted by Us will be the Certificate Date shown in the CERTIFICATE SCHEDULE.

**Newborn Children**

Your newborn children will be provided coverage after the Certificate Date from the moment of birth for 31 days. Coverage for Your newborn child(ren) will not continue beyond 31 days unless You send written notice directing Us to add the newborn child(ren) to Your Certificate. This notice must be received by Us within 31 days of the newborn child's date of birth and must be accompanied by any required additional premium. A claim form or Hospital bill does not constitute written notice.

Coverage for Your newborn child(ren) will be for Sickness or Injury, including care or treatment of:
1. Congenital defects;
2. Birth abnormalities; or
3. Premature birth.

It will not include any benefits for normal newborn child care.

**Additional Dependents**

You may add Eligible Dependents by providing evidence of insurability satisfactory to Us and upon payment of any additional premium, if required.

The acceptance of a new Eligible Dependent and the Effective Date of Coverage for such Eligible Dependent will be shown by endorsement and the date of the endorsement.

25875-C                               -9-                        CMPXX34001

DUPLICATE

We will require that You provide proof that the dependent is in fact a disabled and dependent person at least 31 days prior to the date upon which the dependent would otherwise reach the limiting age, and thereafter we may require such proof not more frequently than annually. In the absence of such proof we may terminate the coverage of such person after the attainment of the limiting age.

### Family Security Benefit

Beginning with the next premium due date following Our receipt of due proof of Your death, We will waive premiums for a period of 12 months for Your Covered Dependents. During this premium waiver period no increase in benefits or addition of Eligible Dependents, except newborns, will be considered. Provisions for termination of coverage for Covered Dependents will apply. Upon expiration of the waiver period, Your Covered Dependent spouse may continue coverage, as stated in the SPECIAL CONTINUATION PROVISION FOR DEPENDENTS by making required premium payments and by becoming a member of the association to which the Group Policy is issued.

### Special Continuation Provision For Dependents

Your Covered Dependents may continue their same (or substantially similar) coverage under a new Certificate without evidence of insurability if their coverage under this Certificate would otherwise terminate because they cease to be an Eligible Dependent for any of the following reasons:

1. Divorce, legal separation, Your death; or
2. A dependent child reaches the Limiting Age.

To continue coverage, You or Your Covered Dependent must request continuation of coverage by application or written notification within 31 days of the date coverage would otherwise terminate, pay any required premium and become a member of the association to which the Group Policy is issued.

### Group Policy

The Group Policyholder may terminate the Group Policy, provided written notice is given at least 31 days prior to the date of termination.

### Extension of Benefits

If an Insured Person is Totally Disabled at the time the Group Policy terminates, benefits will be payable for Covered Expenses incurred due to the Injury which caused such Total Disability. Such benefits are subject to the same terms and conditions of the Group Policy if the Group Policy had remained in force. This extension of benefits will cease on the earliest of:

1. The date on which the Total Disability ceases; or
2. The end of the 90 day period immediately following the date on which the Insured Person's insurance terminated.

### Reinstatement

If coverage under this Certificate terminates due to non-payment of premium, We require an application for reinstatement. The reinstatement will not become effective unless We approved such application. We will advise You of the effective date of reinstatement by giving You written notice of the date, by issuing You an amended Certificate or by issuing You a new Certificate. In any case, the reinstated coverage provides benefits only for:

1. Injury occurring after the effective date of reinstatement; and
2. Sickness first manifesting itself more than 10 days after the effective date of reinstatement.

## BENEFITS

Benefits are payable under this Certificate for the following Covered Expenses. Unless otherwise stated herein, all Covered Expenses are subject to:

1.  The Lifetime Maximum Amounts shown in the CERTIFICATE SCHEDULE;
2.  The Deductible shown in the CERTIFICATE SCHEDULE;
3.  The Coinsurance shown in the CERTIFICATE SCHEDULE;
4.  The Maximum Benefit shown in the CERTIFICATE SCHEDULE;
5.  The EXCLUSIONS AND LIMITATIONS; and
6.  All other provisions of the Group Policy.

### COVERED EXPENSES

Covered Expenses mean the Medically Necessary Usual and Customary Charges for the services, supplies, care or treatment covered under this Certificate which are incurred by an Insured Person as a result of Injury or Sickness and for which the Insured Person is legally obligated to pay. They are incurred on the date that the service is performed or the supply is furnished. Only that portion of a Usual and Customary Charge which is Medically Necessary is a Covered Expense. Covered Expenses must be incurred while this coverage is in force.

**Hospital Room and Board**

Covered Expenses include semi-private accommodations and general nursing care furnished by the Hospital. The charges for a private room which exceed the charges for a semi-private room are not covered unless a private room is Medically Necessary.

**Hospital Intensive Care/Cardiac Care Unit**

Covered Expenses include Confinement in the Hospital's intensive care or cardiac care unit. This benefit is payable in lieu of benefit amount payable for Hospital Room and Board.

**Miscellaneous Hospital Inpatient Charges**

Covered Expenses include all charges made by a Hospital for miscellaneous medical services and supplies necessary for the treatment of the Insured Person during that Confinement.

Covered Expenses will also include x-ray, laboratory and other diagnostic tests, services of a radiologist or radiology group and for services of a pathologist or pathology group for interpretation of diagnostic tests or studies.

The fees charged for take home drugs, personal convenience items, or items not intended primarily for use of the Insured Person while Hospital Confined are not Covered Expenses.

**Physician Visits while Hospital Confined**

Covered Expenses include visits by a Physician, other than the surgeon, while Hospital Confined, limited to a single Physician visit per day.

**Surgeon Benefit**

Covered Expenses include the Physician's charges for performing Surgery.

If two or more surgeries are performed at the same time through separate incisions, We will pay the one providing the largest benefit. We will also pay 50% of the benefits otherwise payable for the other surgeries performed at the same time.

We will not pay for more than one Surgery performed through the same incision during the same operation; however, We will pay for the Surgery providing the largest benefit.

DUPLICATE

14. Breast reduction or augmentation unless necessary in connection with breast reconstructive Surgery following a mastectomy performed while insured under this Certificate;

15. Modification of the physical body in order to improve the psychological mental or emotional well-being of the Insured Person, such as sex-change Surgery;

16. Marriage, family, or child counseling for the treatment of premarital, marriage, family or child relationship dysfunctions;

17. Routine newborn care, unless otherwise stated herein;

18. Engaging in an illegal occupation or illegal activity;

19. Care in a nursing home, custodial institution or domiciliary care or rest cures;

20. Preparation and presentation of medical reports for appearance at trials or hearings. Physical examinations required for school events, camp, employment, licensing and insurance are expressly excluded;

21. Immunizations required for the sole purpose of travel outside of the U.S.A;

22. Payment for care for military service connected disabilities for which the Insured Person is legally entitled to services and for which facilities are reasonably available to the Insured Person and payment for care for conditions that state or local law requires be treated in a public facility;

23. Experimental medical, surgical or other health care procedures, treatments, products or services, unless otherwise stated herein;

24. Personal comfort items, such as television, telephone, lotions, shampoos, etc.;

25. Cosmetic Surgery;

26. Dental Care, treatment or Surgery unless necessitated by Injury to sound natural teeth which occurs while insured under this Certificate. (The expense must be incurred within one year from the date of Injury, and while Hospital Confined or in a Outpatient Surgery Facility);

27. Corrective vision or hearing supplies or for the examination for prescribing or fitting such supplies;

28. The removal of warts, corns, calluses, the cutting and trimming of toenails, care for flat feet, fallen arches or chronic foot strain;

29. Hernia, hemorrhoids, tonsils, adenoids, middle ear disorders, myringotomy; or any disease or disorder of the reproductive organs unless the loss is incurred 6 months after the Insured Person becomes covered under this Certificate;

30. Prescription drug benefits, unless added by rider;

31. Normal pregnancy, except for Complications of Pregnancy, unless added by Rider;

32. Treatment, services or supplies received outside the U.S. or Canada. However, benefits will be payable for Covered Expense incurred as a result of an acute Sickness or Injury sustained during the first 30 days of travel outside of the U.S. or Canada. In no event will benefits be payable beyond the first 30 days of travel outside of the U.S. or Canada; and

33. A Sickness which first manifests itself within 30 days after the Insured Person's coverage becomes effective, until coverage has been in force for a period of one year.

**Pre-Existing Condition**

We will not provide benefits for any loss resulting from a Pre-Existing Condition, as defined, unless the loss is incurred at least one year after the effective date of coverage for an Insured Person.

**Coverage After Age 65 or Earlier Medicare Eligibility**

When an Insured Person attains age 65 or becomes eligible for Medicare, whichever happens first, the benefits of this Certificate and its attachments, if any, are payable only to the extent that Covered Expenses are not paid by Medicare and they would otherwise be payable under this Certificate. The benefits will also be subject to any other EXCLUSIONS AND LIMITATIONS set forth in this Certificate.

## COORDINATION OF BENEFITS

All of the benefits provided under the Group Policy are subject to this provision. However, Coordination of Benefits (COB) may not be applied to claims less than fifty dollars ($50.00). If additional liability is incurred to raise the claim above fifty dollars ($50.00), the entire liability may be included in the COB computation.

25875-C                                -15-                                CMPXX34001

DUPLICATE

d) notwithstanding subparagraphs a), b), and c) above, where the parents are divorced or separated and there is a court decree establishing the financial responsibility of medical or other health care expenses with respect to the child of one parent, then the plan covering the parent with the financial responsibility shall be primary; and

3. If benefit determination order is not established above, the primary plan is the plan which has been in effect the longest except:

a) if plan benefits of the Insured Person are based on a laid-off, or retired employee or a dependent of either, then that plan will be secondary to the other plan's benefits. If neither plan has a provision for a laid-off, or a retired employee or a dependent of either and each plan determines benefits after the other, then this subparagraph a) is not applicable.

We reserve the right to release or obtain information that We deem necessary, about any person to or from:

1. Any other insurance company; or
2. Any organization or person.

At Our request, the Insured Person shall furnish us with any information needed to determine payment of benefits under this COB provision.

### Facility of Payment

Whenever benefits which should have been paid under This Plan are paid under any other Plan, We shall have the right to pay to the organization that made the payments any amount that We feel will satisfy this provision. Amounts so paid will be deemed benefits paid under This Plan and We will be fully discharged from liability under This Plan.

### Right of Recovery

If We, at any time, pay the total Allowable Expense and that amount exceeds the payment required to satisfy the intent of this provision, We will have the right to recover such payments, to the extent of such excess, from among one or more of the following, as We shall determine: any persons to or for or with respect to whom such payments were made; any other insurance companies; any other organization.

### Time Limit for Payment

Payment of benefits must be made within thirty (30) calendar days after submittal of a proof of loss, unless We provide the claimant a clear and concise statement of a valid reason for further delay which is in no way connected with or caused by the existence of this COB provision nor otherwise attributable to Us.

### GENERAL PROVISIONS

### Entire Contract

The Entire Contract consists of:

1. The Group Policy, which includes this Certificate;
2. The application of the Group Policyholder, which will be attached to the Group Policy;
3. Any enrollment applications for the proposed insured individuals; and
4. Any endorsements, amendments or riders attached.

All statements made by the Group Policyholder or by You will, in the absence of fraud, be deemed representations and not warranties.

**Incontestability**

After 2 years from the Insured Person's Effective Date of Coverage, no misstatements, except fraudulent misstatements, made in the enrollment application will be used to void the coverage, or deny a claim unless the loss was incurred during the first 2 years following such Insured Person's Effective Date of Coverage.

No claim for a loss incurred one year after an Insured Person's Effective Date of Coverage will be reduced or denied as a Pre-Existing Condition.

**Conformity**

Any provision of this Certificate which, on the Effective Date of Coverage, is in conflict with the extraterritorial statutes of the state in which You reside on such date, is hereby amended to conform to the minimum requirements of such statutes.

**Change of Residence**

If You move, You must notify the Company.   Only the extraterritorial benefits mandated by the State in which You reside will be considered Covered Expenses under this Certificate.  An Insured Person must be a permanent resident of the United States in order to remain eligible for insurance under this Certificate.

**Subrogation**

You agree that We shall be subrogated to Your right to damages, to the extent of the benefits provided by the Certificate, for Injury or Sickness that a third party is liable for or causes.  You agree to repay Us first out of any monies You obtain regardless of the amount that You recover.  In the event that We retain Our own attorney to represent Our subrogation interest, We will not be responsible for paying a portion of Your attorney fees or costs.

You assign to Us Your claim against a liable party to the extent of Our payments, and shall not prejudice Our subrogation rights.  Entering into a settlement or compromise arrangement with a third party without Our prior written consent shall be deemed to prejudice Our rights.  You shall promptly advise Us in writing whenever a claim against another party is made and shall further provide to us such additional information as is reasonably requested by Us. You agree to fully cooperate in protecting Our rights against a third party.

**Right of Reimbursement**

You may receive benefits under the Group Policy, and may also recover losses from another source, including Workers' Compensation, uninsured, underinsured, no-fault or personal injury protection coverages. The recovery may be in the form of a settlement, judgement, or other payment.

You must reimburse Us from these recoveries in an amount up to the benefits paid by Us under the Group Policy. You agree to repay us first out of any monies You obtain regardless of the amount that You recover.  We have an automatic lien on any recovery.

## THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

### AIR AMBULANCE RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider.

**COVERED EXPENSES**

We will pay benefits for Covered Expenses of an Insured Person while this Rider is in force for Air Ambulance transportation to the nearest available medical facility that can provide adequate care in the event of a Medical Emergency, as defined in the Certificate. Air Ambulance transportation is payable under this Rider at a base rate of $1500, plus an additional $20 per mile, up to a maximum benefit of $3500 per Calendar Year.

This benefit is payable only if:

1. the Insured Person requires an advanced level of care during transportation; and
2. the potential delays which may be associated with ground transportation, including road conditions and traffic, could jeopardize the Insured Person's condition.

**Air Ambulance** means a privately or publicly owned aircraft appropriately licensed by the state where the service originated, that is designed and used to provide air transport of persons suffering from a Sickness or Injury and that contains all life-saving equipment and staff as required by state and local law.

Covered Expenses incurred under this Rider will not be used to satisfy the Certificate Deductible.

We will provide this benefit in consideration of the payment of the required premium for this Rider.

Rider effective date, if different from Certificate Date: _____

**THE MEGA LIFE AND HEALTH INSURANCE COMPANY**

_Peggy G. Simpson_
Secretary

_Philip T. Myh_
President

25902

DUPLICATE

CMRXX109001

# THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

## AMBULATORY CARE RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider and are subject to the maximum benefit amount and Coinsurance, the deductible and the Lifetime Maximum Benefit Amount shown for this Rider in the CERTIFICATE SCHEDULE.

## COVERED EXPENSES

We will pay benefits for Covered Expenses incurred by an Insured Person, while this Rider is in force, for:

1. Diagnostic x-rays and interpretations charges;
2. Laboratory and pathological examinations, and
3. Physical, Occupational, Speech Therapy (preceded by Hospital Confinement or Surgery and not received during Hospital Confinement);

while not Confined to a Hospital and that are related to and necessary for the diagnosis and treatment of a Sickness or Injury. Benefits under this Rider include, but are not limited to, Covered Expenses incurred for:

| | |
|---|---|
| CAT Scans | Magnetic Resonance Imaging (MRI) |
| Mammograms | Upper/Lower G.I. Series |
| Electrocardiogram (EKG) | Blood or serum analysis |
| Angiogram | Stress Tests |

## LIMITATIONS AND EXCLUSIONS

In addition to the EXCLUSIONS and LIMITATIONS of the Certificate, We will not pay benefits under this Rider for:

1. Physician's office visit or clinic charges, Hospital emergency room charges, Outpatient facility charges, Outpatient Surgery Facility charges or any other facility charges associated with the above Covered Expenses;
2. Pre-Existing conditions;
3. Physical examinations or checkups;
4. Prescription drugs and medicines;
5. Radiation or chemotherapy for the purpose of modification or destruction of cancerous tissue;
6. Any test, procedures or services related to pregnancy or childbirth unless Medically Necessary due to Complications of Pregnancy, as defined in the Certificate.

25885

DUPLICATE

CMRXX77001

# THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

## PHYSICIAN OFFICE VISIT BENEFIT RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider and are subject to the maximum benefits and Copayments shown for this Rider in the CERTIFICATE SCHEDULE.

Benefits payable under this Rider are not subject to the Certificate Deductible.

## COVERED EXPENSES

We will pay Covered Expenses incurred by an Insured Person, while this Rider is in force, for Medically Necessary visits to the Physician's office or clinic and for related care services provided by the Physician as a part of such visit, up to the Daily Maximum Benefit subject to the Copayment shown in the CERTIFICATE SCHEDULE. No benefits are payable for services such as routine examinations, immunizations, and preventive care.

**Copayment** means the amount the Insured Person is required to pay for specifically listed Covered Expenses. The Copayment for this Rider is shown in the CERTIFICATE SCHEDULE. Copayments do not count toward Deductibles or Coinsurance Maximums.

Benefits payable under this Rider will not be used to satisfy the Certificate Deductible.

We will provide this benefit in consideration of the payment of the required premium for this Rider.

Rider effective date, if different from Certificate Date: _____

## THE MEGA LIFE AND HEALTH INSURANCE COMPANY

SECRETARY

PRESIDENT

DUPLICATE

CMRXX78001

THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

### CHEMOTHERAPY AND RADIATION THERAPY RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider and are subject to the Daily Maximum Benefits, Coinsurance and the Lifetime Maximum Benefit Amount shown for this Rider in the CERTIFICATE SCHEDULE.

Benefits payable under this Rider are not subject to the Certificate Deductible.

**COVERED EXPENSES**

We will pay benefits for Covered Expenses incurred by an Insured Person, while this Rider is in force, for Chemotherapy and Radiation Therapy. The condition for which Chemotherapy or Radiation therapy is provided must be first diagnosed and the treatment must be received while coverage is in force under this Rider.

All Covered Expenses payable under this Rider are paid in lieu of Covered Expenses incurred under the Certificate and will not be used to satisfy the Certificate Deductible.

We will provide this benefit in consideration of the payment of the required premium for this Rider.

Rider effective date, if different from Certificate Date: _____

THE MEGA LIFE AND HEALTH INSURANCE COMPANY

SECRETARY                    PRESIDENT

25887                    DUPLICATE                    CMRXX79001

# THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

## ACCUMULATED COVERED EXPENSE RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

Once an Insured Person's Covered Expenses under the Certificate total the Accumulated Covered Expense Amount shown in the CERTIFICATE SCHEDULE during a Period of Confinement (regardless of the maximum benefit limits shown in the CERTIFICATE SCHEDULE), Covered Expenses incurred during the remainder of that Period of Confinement will be paid at 100% up to the Aggregate Maximum Amount shown in the CERTIFICATE SCHEDULE.

We will provide this benefit in consideration of the payment of the required premium for this Rider.

Rider effective date, if different from Certificate Date: _____

**THE MEGA LIFE AND HEALTH INSURANCE COMPANY**

SECRETARY                    PRESIDENT

DUPLICATE

CMRXX81001

# THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

## LEGEND PRESCRIPTION DRUG EXPENSE RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms and DEFINITIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider and are subject to the maximum benefit amount and deductible stated herein.

## BENEFITS

If an Insured Person incurs Covered Expenses for Sickness or Injury, We will pay a benefit. This benefit is the amount equal to the actual charge based on Participating Pharmacy prices for a Covered Expense, subject to the applicable Benefit Payment Rate/Deductible/Copayment shown below. Expenses are considered incurred on the date of Pharmacy service.

You have the option to receive drugs either retail or through Our Mail Service Legend Prescription Drug Program.

## BENEFIT PAYMENT RATE/DEDUCTIBLE/COPAYMENT

### BENEFIT PAYMENT RATE/DEDUCTIBLE/COPAYMENT

A Deductible of $50 will apply each Calendar Year to each Insured Person. After the Deductible is met, We will pay benefits subject to the applicable Benefit Payment Rate and Copayment specified below.

**Participating Pharmacy**

| | |
|---|---|
| Generic Drugs (not to exceed a 30 day supply) | 100% less the $10.00 Copayment |
| Brand Name Drugs (not to exceed a 30 day supply) | 25% discount |

**Non-Participating Pharmacy**　　　　　　　　　　　　　0%

**Mail Service Legend Prescription Drugs**
(Not to exceed a 90 day supply through Our designated mail service program)

| | |
|---|---|
| Generic Drugs | 100% less the $10.00 Copayment |
| Brand Name Drugs | 25% discount |

**Benefit Maximum**

| | |
|---|---|
| Per Insured Person | $1,000 per calendar year |

DUPLICATE

**Non-Participating Pharmacy** means any Pharmacy which regularly dispenses Legend Prescription Drugs and has not entered into a Participation Agreement with Us. We will not pay for any benefits under this Rider for drugs that are purchased at a Non-Participating Pharmacy located in Our Provider Network Area.

**Participating Pharmacy** means any Pharmacy which regularly dispenses Legend Prescription Drugs and has entered into a Participation Agreement with Us.

**Pharmacy** means a facility where the practice of Pharmacy occurs.

**Prescription Order** means the request for a drug or device issued by a Physician or other qualified provider duly licensed to make such a request in the ordinary course of his/her professional practice.

## EXCLUSIONS

We will not provide any benefits for:

1. Expenses incurred after coverage terminates under this Rider;
2. Non-legend drugs;
3. Insulin, insulin syringes, needles and other diabetic supplies;
4. Devices of any type, even though such devices may require a Prescription Order, such as, but not limited to, contraceptive devices, therapeutic devices, artificial appliances, hypodermic needles, syringes, support garments, ostomy supplies, and other non-medical substances, or similar devices, regardless of intended use;
5. Contraceptives, oral or other, whether medication or device, regardless of intended use;
6. Immunization agents, allergy sera, biological sera, blood or blood products administered on an outpatient basis;
7. Anti-smoking aids (e.g. nicorette gum, nicotine patches);
8. Drugs labeled, "Caution - limited by federal law to Investigational use" or Experimental drugs, even though a charge is made to the Insured Person;
9. Products used for unapproved cosmetic indications;
10. Any illegal substance;
11. Drugs used to treat or cure baldness, and anabolic steroids used for body building;
12. Any charge for the administration of Legend Prescription Drugs or injectable insulin;
13. Drugs for participants covered under Medicare or Medicaid programs, or drugs paid by or covered under any benefit or insurance program;
14. Non-injectable vitamins or fluorides or health foods, health and beauty aids, cosmetics, nutritional or dietary supplements;
15. Drugs determined to be "less than effective" by the Drug Efficacy Study Implementation (DESI) Program. For example: Equagesic, Midrin, Cyclospasmol, and Vasodilan have been rated less-than-effective. The Omnibus Budget Reconciliation Act of 1981 has mandated the Health Care Financing Administration to ban reimbursement for less-than-effective drugs products by federal Medicare/Medicaid agencies;
16. Any medication, legend or not, which is consumed or administered at the place where it is dispensed;
17. Anorectic, Weight control drugs; or
18. Fertility drugs.

DUPLICATE

## THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called:  the Company, We, Our or Us)
Home Office:  Oklahoma City, Oklahoma
Administrative Office:  P.O. Box 982010
North Richland Hills, Texas  76182-8010
Customer Service:  1-800-527-5504

### EMERGENCY ROOM BENEFIT RIDER

This Rider is made a part of the Group Policy and Certificate to which it is attached. The Rider is subject to all provisions, terms, DEFINITIONS and EXCLUSIONS AND LIMITATIONS of the Group Policy and Certificate which are not inconsistent with the provisions of this Rider.

The benefits provided by this Rider will not duplicate the benefits provided under the Certificate and any other rider and are subject to the maximum benefit amount, Coinsurance and Copayment shown for this Rider in the CERTIFICATE SCHEDULE.

Benefits payable under this Rider are not subject to the Certificate Deductible.

### COVERED EXPENSES

We will pay benefits for Covered Expenses of an Insured Person while this Rider is in force, for emergency room treatment received for a Medical Emergency.  These benefits are payable only for a Medical Emergency that does not result in a Hospital Confinement.

Emergency Room treatment for a non-Medical Emergency will not be considered a Covered Expense under this Rider.

Benefits payable under this Rider will not be used to satisfy the Certificate Deductible.

We will provide this benefit in consideration of the payment of the required premium for this Rider.

Rider effective date, if different from Certificate Date: _____

**THE MEGA LIFE AND HEALTH INSURANCE COMPANY**

SECRETARY                              PRESIDENT

25908                                                    DUPLICATE                              CMRXX125001

# THE MEGA LIFE AND HEALTH INSURANCE COMPANY

A Stock Company
(Hereinafter called: the Company, We, Our or Us)
Home Office: Oklahoma City, Oklahoma
Administrative Office: P.O. Box 982010
North Richland Hills, Texas 76182-8010
Customer Service: 1-800-527-5504

## AMENDATORY ENDORSEMENT

This Amendatory Endorsement is made a part of the Group Policy and Certificate to which it is attached. It is subject to all the provisions of the Group Policy which are not inconsistent with this endorsement. It is applicable only to Insured Persons who are residents of the State of Alabama.

1. The following definitions under the **DEFINITIONS** section are hereby deleted and replaced with the following:

   - **Eligible Dependent** means Your lawful spouse and Your unmarried natural and adopted children and step-children who are under 19 years of age (the Limiting Age). The Limiting Age is extended from the child's 19th birthday to the child's 24th birthday if the child is enrolled as a full-time student and attends classes regularly at an accredited college or university.

   - **Pre-Existing Condition** means a medical condition, Sickness or Injury not excluded by name or specific description for which:
     1. Medical advice, Consultation, or treatment was recommended by or received from a Physician within a one year period prior to the Effective Date of Coverage; or
     2. Symptoms existed which would cause an ordinarily prudent person to seek diagnosis, care or treatment within the one year period before the Effective Date of Coverage.

2. The following definition is added under the **DEFINITIONS** section:

   - **Clean Claim** means a claim for purpose of payment of covered health care expenses that is submitted to Us on the claim form which contains substantially all of the required data elements necessary for accurate adjudication, without obtaining additional information from the provider of the service or from a third party. In no event shall We require that the health care provider submit information or data elements in excess of those required on the standard health insurance claim format as a condition to the acceptance and processing of an initial claim as a Clean Claim.

3. The following Covered Expenses are added to the BENEFITS section. Unless otherwise stated, all Covered Expenses are subject to the Deductible, Coinsurance and Lifetime Maximum Amount shown in the CERTIFICATE SCHEDULE; the Maximum Benefit, Benefit and/or Aggregate Maximum Amounts, if any, shown in the CERTIFICATE SCHEDULE; and the Coinsurance Maximum and Copayments, if any, shown in the CERTIFICATE SCHEDULE. Unless otherwise stated, these Covered Expenses are also subject to the EXCLUSIONS AND LIMITATIONS and all other provisions of the Group Policy:

   - **Mammography Screening**

     Covered Expenses include charges for Mammography Screening for the presence of breast cancer for an insured adult female at the following age intervals:
     1. A single mammography screening once every two years for women ages forty (40) to forty-nine (49), unless Your Physician determines, due to certain risk factors, that a mammography screening is required more often; and
     2. A single mammography screening once per Calendar Year for women age fifty (50) and older, unless Your Physician determines, due to certain risk factors, that a mammography screening is required more often.

DUPLICATE

5.  The first paragraph in the **Subrogation** provision under the **GENERAL PROVISIONS** section is hereby deleted and replaced as follows:

* **Subrogation**

  You agree that We shall be subrogated to any Insured Person's right to damages, provided such Insured Person has been made whole, to the extent of the benefits provided by the Certificate, for Injury or Sickness that a third party is liable for or causes. In the event that We retain Our own attorney to represent Our subrogation interest, We will not be responsible for paying a portion of Your attorney fees or costs.

In Witness whereof, the Insurance Company has caused this Amendment to be signed by its President and Secretary.

Signed for The MEGA Life and Health Insurance Company at North Richland Hills, Texas.

Secretary                                   President

Case 2:06-cv-00297-WKW-TFM    Document 15    Filed 06/08/2006    Page 1 of 51

**Certificate Number:** 453.00

Premium Payment Mode: ☑ M  ☐ Q  ☐ A

**Health Choice Benefit Plan (25875)**
Ded. ☑ $1000  ☐ $2000  ☐ $3000  ☐____
R & B ☐ $200  ☐ $300  ☑ $400  ☐ $500  ☐ $600  ☐____

☐ **Signature Benefit Plan (25876)**
Ded: ☐ $1500  Coins. ☐ 50% ☐ 80%
Ded: ☐ $2,500  ☐ $5,000  ☐ $7,500  ☐ $10,000
Coins. ☐ 50% ☐ 80% ☐ 100%

☑ **Critical Care (GSD)**  Amt. $_____

☐ **Premiere PPO (25877)**
Ded. ☐ $1,000  ☐ $1,500  ☐ $2,500  ☐ $5,000  ☐ $7,500

☐ **Premiere PPO Plus (25877)**
Ded. ☐ $1,000  ☐ $1,500  ☐ $2,500  ☐ $5,000

☐ **HIPAA** ☐ Individual Plan_____ Ded. $_____
☐ Group  R&B_____

**RIDER/OPTIONAL BENEFITS**
☐ Outpt. Acc (25882) Ded. $_____
Max. $_____
☐ Cont Care (25883)
☐ Preg./Birth (25884) $_____
☑ Amb. Care (25885)
Ded. $300 Max. $_____ Coins. 80 %
☐ POV (25886) ☑ 1/16 ☐ 2/24
☐ Chemotherapy (25887)

☑ Wellness (25888)
☑ ACE (25890)
☐ ROP (25044)
☑ Air Amb (25902)
☑ R&B Enh $100
☑ Misc ☐ 2x ☑ 3x
☑ Surgical ☐ 2x ☑ 3x
☑ Other Van Am Rider

**Special Requests**

Lead #: 190246744   ☐ Referral  ☐ Pers. Dev. Lead

304910 306001

**ADDITIONAL BENEFITS**
☑ Rx Plan_____ ☑ Vision (25213) #_____ ☐ Dental (25879)#_____
☐ Acc. Med. (25315) R&B $400 Ded. $_____
☐ Acc. Cat. (25314) Coins_____% Ded. $_____
☐ Inc. Prot (25916)  ☐ Inc. Prot Plus (25915) ☐ B ☐ W
Elim. Per._____days  Indem. Ben. $_____
☐ Waiv. Prem (25917) ☐ ROP (25918)
☐ Life Plan (25430)  ☐ Life Plus Plan (25919)
Prim. ☐ ADB ☐ ALB  Prim. DI Indem Ben $_____
Sec. ☐ ADB ☐ ALB  Sec. DI Indem Ben $_____
☐ Primary $_____  ☐ Smoker ☐ Non-Smoker
Beneficiary_____  SS#_____
☐ Secondary $_____  ☐ Smoker ☐ Non-Smoker
Beneficiary_____  SS#_____

**Association Membership**
I am a member of the following Association: NASE
Member Level:_____ Member#_____
☐ Assoc. Adv. Card  Careington ☐ F ☐ I

**Enrollment Application for: The MEGA Life and Health Insurance Company • Oklahoma City, OK 73118**

## 1. SCHEDULE OF FAMILY MEMBERS - FIGURE HEALTH PREMIUM AT AGE LAST BIRTHDAY

| PLEASE PRINT (FULL NAME) | SEX | RELATIONSHIP | DOB | BIRTHPLACE | AGE | HEIGHT | WEIGHT | SOCIAL SECURITY # |
|---|---|---|---|---|---|---|---|---|
| (1) David A. Paher | M | Primary | 7-7-77 | Idaho | 25 | 6.0 | 175 | 407251347 |
| (2) Philena J. Paher | F | Wife | 8-19-80 | West-Virg. | 22 | 5.1 | 120 | 232358631 |
| (3) | | | | | | | | |
| (4) | | | | | | | | |
| (5) | | | | | | | | |
| (6) | | | | | | | | |

2. Marital Status: ☐ Single  ☑ Married

3. Applicant's Home Address
Address 11193 Brooklyn Rd.
City Andalusia  ST Al  Zip 36420
County_____
Daytime Telephone (334) 488-4258
Home Telephone (334) 222-3890
Cell Phone (334) 222-____
E-mail Address cdvgrove@alaweb.com
Fax Number_____

4. Are all members U.S. Citizens? Yes
If "No," please explain:_____
How long in the U.S.?_____

5. Occupation and duties of adult family members:
(1) Pulpit Minister
(2)_____

6. Are all members between the ages of 19 and 24 full-time students?_____
If "Yes," name school_____
If "No," which applicant?_____
Explain_____

7. Is the Applicant, spouse or any dependent child (even if not proposed for insurance) now pregnant or an expectant father?
If "Yes," whom? no
Estimated date of delivery_____

8. Is any Applicant eligible for or covered under Medicare or Medicaid? If "Yes," whom?_____

9. Do you currently have health/life insurance?_____
If "Yes," is it ☐ Group or ☑ Individual, names of companies, certificate/policy number, amounts and types of coverage?
Medical Savings Insurance

Date of cancellation_____
Will existing health/life coverage be replaced or changed if proposed health/life coverage is issued? ☑ Yes ___No
If no, reason_____

10. Does any Applicant to be insured engage in any hazardous sport or activity? (e.g.: flying, diving, skydiving, racing.) no
Name:_____ Activity:_____

11. During the past ten years, has any person to be insured had insurance declined, rated, ridered, or otherwise changed? no
If "Yes," which applicant_____ Date_____
Reason_____
Company_____

12. a) Applicant's Doctor Dr. Kerr
Address_____
City Andalusia  State Al  Zip 36dz17
Telephone Number (334)_____
b) Spouse's Doctor Dr. Radbill
Address_____
City Bham  State Al  Zip 3_____
Telephone Number (205)_____-_____
c) Child(ren)'s Doctor_____
Address_____
City_____ State_____ Zip_____
Telephone Number (_____)_____-_____

13. Is any member presently taking any medications? no
a) Who?_____
b) What?_____
c) Why?_____

14. Has any applicant used tobacco products in the last 12 months? no  If "Yes," who and what?_____

25098-APP (9/99)

15. Have you or any Applicant ever had your driver's license suspended, revoked or ever received any citations for driving while under the influence (i.e. DWI or DUI)? _____ No _____
    If "Yes," list details. _____

16. a. When was the last time the applicant visited a doctor? _Dec 2002_
    Symptoms? _What_ Results? _fine_ Recommendations? _____
    b. When was the last time the spouse visited a doctor? _Jan 2003_
    Symptoms? _check up_ Results? _fine_ Recommendations? _____
    c. When was the last time the child(ren) visited a doctor? _____
    Symptoms? _____ Results? _____ Recommendations? _____

17. Have you or any person to be insured **EVER** had symptoms, been diagnosed, received medical advice or been treated for (If "Yes," circle applicable condition):

| | YES | NO | | | YES | NO |
|---|---|---|---|---|---|---|
| a) Heart disorder, including murmur, heart attack, chest pain, artery or vein disorder, high blood pressure or stroke? | ☐ | ☒ | i) Hernia, hemorrhoids, polyps or rectal disorder? | | ☐ | ☒ |
| b) Diabetes, hypoglycemia, goiter or thyroid disorder? | ☐ | ☒ | j) Eye, ear, nose or throat disorders? | | ☐ | ☒ |
| c) Blood or spleen disorder including anemia or leukemia? | ☐ | ☒ | k) Skin disorders, burns, lacerations, dermatitis, boils or chronic rashes? | | ☐ | ☒ |
| d) Breast or reproductive organ disorder? | ☐ | ☒ | l) Back, spine, arm or leg disorder or arthritis, gout bursitis or neuritis? | | ☐ | ☒ |
| e) Cancer, cyst, tumor or neoplasm? | ☐ | ☒ | m) Complications of pregnancy and/or Caesarean section? | | ☐ | ☒ |
| f) Respiratory disorder, including asthma, bronchitis, COPD, emphysema, lung disease or breathing problems? | ☐ | ☒ | n) Brain disorder, epilepsy, fainting spells, dizziness, seizures, paralysis, tremors, palsy, head injury or chronic headaches? | | ☐ | ☒ |
| g) Kidney, urinary bladder, urinary tract, stones or prostate disorders? | ☒ | ☐ | o) Mental or nervous disorder, depression, anxiety, alcoholism or drug addiction? | | ☐ | ☒ |
| h) Stomach, intestines, gallbladder, liver or pancreas disorder including ulcer, colitis, enteritis, hepatitis or pancreatitis? | ☐ | ☒ | p) Been diagnosed by a physician for any disorder of the blood or immune system including AIDS? | | ☐ | ☒ |

18. Any other medical or surgical advice, hospitalizations, treatment or operations in the **last five (5) years?** ☒ Yes ☐ No

19. IMPORTANT: Give complete details of any "Yes" answers to questions 17 through 18.

| Name | Nature of Illness or Accident (Include Diagnosis, Operations, and Medications) | Date Started | Date Stopped | Operation | Hospitalized From/To | Doctor's Name and Address |
|---|---|---|---|---|---|---|
| Philena | Kidney infection | 8/99 | 8/99 | ☐ Yes ☒ No | — | |
| Philena | Endometriosis | 12/02 | 12/02 | ☒ Yes ☐ No | outpatient | |
| | | | | ☐ Yes ☐ No | | |
| | | | | ☐ Yes ☐ No | | |

Should space provided be inadequate, use separate paper to record complete information with signature of applicant.

## DECLARATIONS AND AGREEMENTS

I agree that (a) all statements and answers in this Application are true to the best of my knowledge and belief; (b) this Application will form a part of the contract; (c) the agent does not have the authority on behalf of the Company to accept the risks, or to make, alter or amend the coverage or to extend the time for making any payment due on such coverage and (d) no insurance will take effect unless and until the Application is approved by the Company and the policy/certificate is delivered to the Applicant while the conditions affecting the insurability are and have remained as described herein and the first premium has been paid in full.

## INSURANCE FRAUD WARNING

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement, or conceals information for the purpose of misleading is guilty of insurance fraud and is subject to criminal and/or civil penalties.

I have received and understand the Notification of Consumer Report and Medical Information Bureau Pre-Notice.

Signed _2_ / _12_ / _03_ at _Mobile_ , _AL_ X _____ (signature)
      Date            City          State   Signature of Applicant

                                            X _Philena Pahir_ (signature)
                                            Signature of Spouse (If to be covered)

To Be Answered By Agent:
I certify that each question on this application was asked by me of the Applicant(s) named above, and all answers are accurately recorded.

_____ (signature)   _Stephanie Tranchina_   _9a110_
Signature of Licensed Agent   Print Full Name   Agent No.

25098-APP (9/99)                                                    (3/02)